**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CROCS, INC.** | ) | |
| | ) | |
| Plaintiff, | ) | MISC NO. 16-cv-11238 |
| | ) | |
| v. | ) | PENDING IN THE U.S. DISTRICT COURT |
| | ) | FOR THE DISTRICT OF COLORADO: |
| **EFFERVERSCENT, INC., et al,** | ) | Case No. 06-cv-00605-PAB-KMT |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**PLAINTIFF CROCS, INC.'S MOTION TO COMPEL COMPLIANCE WITH
SUBPOENA BY NONPARTY WALGREENS COMPANY AND BRIEF IN SUPPORT**

---

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff Crocs, Inc. ("Crocs") moves for

an order compelling compliance with a subpoena served on non-party Walgreens Company

("Walgreens") on October 14, 2016. The subpoena, seeking documents for use in litigation

pending in the District of Colorado and duly issued by that Court, directs Walgreens to produce

certain documents pursuant to three requests, encompassing records of Walgreen's purchases and

sales of footwear made by, and certain communications with, U.S.A. Dawgs, Inc. and its

Canadian affiliate Double Diamond Distribution, Ltd. (collectively, "Dawgs").[1]

---

[1] Pursuant to Local Rule 37.2, Crocs counsel Sean Callagy and Lara Palanjian attempted to meet
and confer with Walgreens counsel Brian Elliott, first by sending two letters, each of which went
unanswered, and finally by arranging to speak via telephone at 3:00 p.m. on December 7, 2016.
Declaration of Sean M. Callagy, submitted herewith ("Callagy Decl.") ¶¶4-7. Mr. Elliott missed
the December 7 call. *Id.* ¶7. In subsequent email correspondence, Mr. Elliott never identified
documents that Walgreens would produce. *Id.* Moreover, Mr. Elliott and his colleagues filed a
motion to quash the subpoena in the District of Colorado *prior to* the scheduled meet-and-confer
call, asking that Walgreens be excused from producing *any* documents. *Id.* ¶6. Further meet-
and-confer would evidently be futile.

Crocs requests that this Court compel production forthwith. Walgreens has not produced a single document; it repeatedly refused to meet-and-confer; and to date, has not identified a category of documents that it will produce. This is not the result of inadvertence. Walgreens is represented by the same counsel who also represents Dawgs. Crocs sought similar information from Dawgs, and despite months of meet-and-confer efforts, Dawgs only produced 33 records of its sales to Walgreens from 2012 to 2016, produced no communications at all, and refused to use "Walgreens" as a term to search for relevant information. This despite the materials being unquestionably relevant to Crocs's patent claims and Dawgs's antitrust and tort counterclaims, and despite Dawgs describing Walgreens as its "largest customer."

Crocs then sought the information from Walgreens. Walgreen—represented by Dawgs's attorneys—refused to provide *any* records, saying Crocs must obtain records from Dawgs instead. This despite Dawgs's production being manifestly incomplete. Crocs tried to meet-and-confer, explaining by letter that it sought documents "sufficient to show" purchases and sales, as well as targeted communications from a limited number of custodians. Walgreens ignored this letter and a follow-up message. When Crocs tried one last time to meet and confer on December 7, Walgreens failed to dial in for the call, and preemptively moved to quash the subpoena in the wrong venue.[2] Walgreens still has not identified a single category of documents it will produce, and continues to assert that *any* compliance with the subpoena would be unduly burdensome.

---

[2] On the morning of December 7, 2016, without warning, Dawgs filed a motion to quash the subpoena in the District of Colorado. Callagy Decl. ¶6. Dawgs lacks standing to move to quash, and in any case, the motion is untimely, coming over a month *after* the subpoena's November 4 return date. *See* Fed. R. Civ. P. 45(d)(3)(A) (requiring that a "timely" motion to quash be filed in the district *where compliance is required*). It appears that Dawgs filed that motion in an attempt to prevent Crocs from seeking relief here.

Crocs has no choice but to seek judicial relief. Walgreens, Dawgs and their common counsel cannot point to another party as the source of the relevant information, all the while failing to produce complete records on behalf of either. Because the information is indisputably relevant and poses at most a minor burden upon Walgreens, Crocs asks that this Court enter an order compelling Walgreens to produce the documents. Crocs also seeks its fees and costs due to Walgreens' obstructionism and failure to meet-and-confer in good faith. Unfortunately, this is not an isolated instance: the same counsel representing Dawgs and Walgreens has also blocked Crocs's efforts to obtain documents other third parties.

## I. PROCEDURAL HISTORY

### A. Crocs Sues Dawgs For Infringement and Prevails at the Federal Circuit, and Sues Dawgs in Colorado for Damages.

Crocs, based in Niwot, Colorado, has been designing, developing, manufacturing, marketing and distributing casual lifestyle footwear for men, women and children since the early 2000s. Given Crocs's success and high regard by consumers world-wide, Crocs has attracted the attention of many who have attempted to emulate, or even outright copy Crocs's famous designs. Three of the patents that Crocs obtained to protect and enforce its intellectual property rights are utility patent No. 6,993,858 ("the '858 patent"), which claims a novel design for foam-based footwear, and design patent Nos. D517,789 ("the '789 patent") and D632,465 ("the '465 patent"), both of which claim novel ornamental designs.

In 2006, Crocs filed a patent infringement action against Dawgs and others in the District of Colorado. Civ. No. 06-cv-00605-PAB-KMT (the "Colorado Action"). Crocs simultaneously sought relief from the U.S. International Trade Commission ("ITC") to prevent importation of infringing footwear. In the course of those proceedings, the Federal Circuit affirmed the validity

of Crocs's patents, which Dawgs was found to infringe. *See Crocs, Inc. v. ITC*, 598 F.3d 1294, 1306, 1311 (Fed. Cir. 2010); *In re Certain Foam Footwear*, Inv. No. 337-TA-567, USITC Pub. 4260 (ITC Oct. 1, 2011), *available at* 2011 WL 5997932, at *3. In early 2012, the ITC entered a General Exclusion Order (or "GEO") barring the importation of the infringing Dawgs footwear. During the pendency of ITC proceedings and the Federal Circuit appeal, from 2006 to 2012, the Colorado Action was stayed. The stay was lifted in 2012, at which time Crocs added the U.S.A. Dawgs affiliate as a defendant. Colorado Action, ECF No. 103. The case was stayed on Dawgs's motion in 2012; the stay was lifted again in April 2016. *Id.* ECF Nos. 137, 184.

**B.   Dawgs Files Antitrust and Other Counterclaims Against Crocs in Colorado, Raising Claims That Crocs Interfered With Dawgs's Customers.**

On May 31, 2016, Dawgs filed amended counterclaims, alleging that Crocs monopolized the "market" for clog-type footwear, and prevented Dawgs from selling *any* footwear. *Id.* ECF No. 209 at ¶¶2, 240, 252-253. Dawgs also claimed the ITC proceeding was "sham litigation," despite Crocs prevailing. *Id.* Dawgs asserted that Crocs's attempt to monopolize the market negatively impacted USA Dawgs's continuing business dealings with its customers, and Crocs intentionally interfered with those relationships. *See, e.g.*, *id.* ¶¶70, 174, 179, 193, 203, 221, 230, 251-254.

**C.   When Crocs Tried to Obtain Discovery From Dawgs and Walgreens, Both Refused to Comply.**

Dawgs's counterclaims put at issue its dealings and relationship with its customers such as Walgreens. Consequently, on June 8, 2016, Crocs served requests for production on Dawgs, seeking documents sufficient to show Dawgs's sales of footwear to third parties. Callagy Decl. ¶8 & Ex. 8. Crocs also sought email communications with Walgreens by proposing "Walgreen!"

4

as a search term several months ago. *Id.* ¶15. However, Dawgs has not produced a single email communication with Walgreens to date and refuses to use "Walgreen!" as a search term, despite extensive meet-and-confer efforts. *Id.* ¶¶8-15 & Exs. 9-15. And Dawgs has only produced limited evidence of sales to Walgreens: 33 records reflecting sales from 2012 to 2016, some of which do not reflect the prices of the shoes sold. *Id.* ¶14. Dawgs has produced <u>no records of sales</u> to Walgreens for the years 2006 to 2011. *Id.*

In light of this, and to verify the accuracy of the few records Dawgs produced, on October 14, 2016, Crocs served a subpoena on Walgreens with a return date of November 4. *Id.* ¶2 & Ex. 1. On October 28, attorney Brian Elliott—outside counsel for Dawgs, and previously Dawgs's in-house counsel and general manager—served objections on behalf of Walgreens. *Id.* ¶2 and Ex. 2. Walgreens refused to produce any documents, stating that Crocs should obtain the materials from Dawgs instead (and if unsuccessful, only then seek production from Walgreens), or that the documents were irrelevant. Ex. 2.

Crocs wrote to Mr. Elliott on November 15, explaining that Dawgs had not provided complete records or email communications with Walgreens, and cited legal authority that Crocs is entitled to Walgreens's records to ascertain the completeness of Dawgs's production. Callagy Decl. ¶4 & Ex. 3 at 1-2. Crocs also asked Mr. Elliott to explain specifically what Walgreens had done to investigate the burden associated with the requests. *Id.* Finally, Crocs asked Mr. Elliott to identify who at Walgreens communicated with Dawgs so that the parties could limit the search for documents to those custodians, thereby reducing the burden of any response. *Id.* at 4. Crocs asked for a response by November 18. *Id.* Mr. Elliott never responded. Callagy Decl. ¶4.

On December 2, Crocs sent Mr. Elliott a follow up email, again asking for a response to the November 15 letter. *Id.* ¶5 & Ex. 4. Mr. Elliott never responded to that message, either. *Id.*

On December 6, Crocs sent one last email to Mr. Elliott, asking to meet and confer. *Id.* ¶6 & Ex. 5. Mr. Elliott offered to be available at 3 p.m. the next day, to which Crocs assented. *Id.* ¶6 & Ex. 6. Then, on December 7 at 2:07 a.m.—*i.e.* twelve hours *before* the parties were to meet-and-confer concerning the subpoena—Dawgs filed a motion to quash the subpoena to Walgreens in Colorado. Callagy Decl. ¶6. Dawgs never met and conferred prior to filing that motion. *Id.* Then, Mr. Elliott failed to dial in for the scheduled call. *Id.* ¶7. After Crocs's counsel sent an email noting Mr. Elliott's absence, Mitchell Shapiro—who is in-house counsel for Dawgs, and does not represent Walgreens—emailed that Walgreens and other third parties were "willing to produce documents" but were "just not prepared to be unduly burdened by Crocs' requests[.]" *Id.* & Ex. 7. Neither Mr. Shapiro nor Mr. Elliott described what would be produced or under what circumstances. *Id.* Crocs requested that Dawgs withdraw its motion to quash; Dawgs refused. *Id.*

### D. Dawgs Has Blocked Crocs's Attempt To Obtain Materials Relevant to Dawgs's Counterclaims From Other Third Parties, Including CVS and Visions.

Dawgs has produced incomplete information for other customers, including CVS Phamacy, Inc. ("CVS") and Visions Limited ("Visions"). Callagy Decl. ¶¶14-19. And when Crocs issued subpoenas to those entities, Mr. Elliott appeared on their behalf and refused to provide a single document. *Id.* On November 22, 2016, Crocs moved to enforce the subpoena to CVS in the District of Rhode Island, and intends to move to enforce the subpoena to Visions as well. *Id.* ¶17.

## II. ARGUMENT

### A. Walgreens Has Improperly Refused to Comply with a Subpoena Seeking Relevant Documents.

The scope of discovery is deliberately broad in order to aid the litigation process. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009) ("Liberal discovery is provided for the sole purpose of assisting in the preparation, and trial, or the settlement, of litigated disputes.") (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)); *see also Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("[T]he scope of discovery should be broad in order to aid in the search for truth.") (citation omitted). This is true whether discovery is sought from a party under Rule 34 or from a non-party under Rule 45. "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment; *see also Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253-54 (S.D. Ind. 2002); *First Am. Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 21 (2d Cir. 1998).

Here, Crocs may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "While information need not be admissible at trial to be relevant, a request for information must appear reasonably calculated to lead to the discovery of admissible evidence." *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 814 (N.D. Ill. 2015) (citations and internal quotation marks omitted). "The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008).

Crocs requests that the Court compel production of the documents sought in the subpoena. No party disputes that the materials sought are relevant. Yet common counsel for Walgreens and Dawgs is blocking Crocs from obtaining them. First, Dawgs refused to produce the documents. Then, Walgreens refused to produce records, failed to engage in the meet-and-confer process in good faith, and belatedly tried to quash the subpoena in the wrong venue. This run-around has drawn out the discovery process and required motions here and in other Courts. Crocs sets forth each Request For Production in order below.

***Dawgs's sales of footwear to Walgreens (RFP No. 1)***: This request seeks documents <u>sufficient to show</u>, by product and date, Walgreen's purchases of footwear products from Dawgs from 2006 to present, *i.e.*, since the issuance of Crocs's patents. This information is relevant to patent infringement and damages. It is also relevant to Dawgs's claims that Crocs intentionally interfered with the Dawgs's relationship with its customers (including Walgreens) and waged a "sham litigation" campaign that left Dawgs unable to sell *any* footwear—not just the shoes that were found to infringe the patents. Crocs seeks materials "sufficient to show" sales, so Walgreens could comply with a targeted set of spreadsheets, pivot tables or summary records. Walgreens does not dispute the relevance of the materials, but has insisted that it will only provide what Crocs is "unable to obtain from Defendants." Callagy Decl. Ex. 2 at 4.

As noted above, Crocs has made many efforts to obtain these materials from Dawgs, but Dawgs only provided a smattering of 33 incomplete records. Some do not reflect the prices of the shoes sold, and Dawgs has produced no records of sales to Walgreens for the years 2006 to 2011. Callagy Decl. ¶14. Yet Dawgs says Walgreens is one of its "largest customers," indicating that more sales records exist. *Id.* Ex. 6. Walgreens provided no authority for its

position that it need not provide documents, even after Crocs cited case law indicating that Crocs is entitled to take third-party discovery *regardless* of what Dawgs produces. *See* Callagy Decl. Ex. 3. For these reasons, Walgreens's objections cannot stand.

Additionally, Walgreens did not meet and confer in good faith. It ignored Crocs's November 15 and December 2 written communications. Callagy Decl. ¶¶4-5. Walgreens then missed the parties' agreed-upon December 7 call. *Id.* ¶7. Rather, hours earlier, the same attorneys filed an improper and untimely motion to quash the subpoena in Colorado, despite having never met and conferred or indicated that a motion was forthcoming. *Id.* ¶6.[3] The November 4 response date for the subpoena had long since come and gone with Walgreens having neither produced documents, requested an extension, nor filed a motion to quash in this Court, as the law requires. *See* Fed. R. Civ. P. 45(d)(3)(A). Unless the Court enters an order compelling production now, it appears that Crocs will never obtain responsive materials. *See* *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433584, at *3, *7 (N.D. Ill. Jul. 2, 2002) (granting motion to compel where moving party "repeatedly attempted to resolve this dispute and requested . . . documents be produced"); *Hillberry v. Wooden Teddy Bear, Inc.*, No. 07-cv-00913-WDM-KMT, 2008 WL 324014, at *3 (D. Colo. Feb. 5, 2008) (granting motion to compel where "the plaintiff attempted in good faith to obtain the disclosure or discovery without court action, sending a letter attempting to more

---

[3] While counsel for Dawgs (who does not represent Walgreens) later stated via email that third parties such as Walgreens *might* agree to produce some documents, counsel maintained the same burden objections, and did not state what documents would be produced or when. Callagy Decl. Ex. 7. This last-minute effort to stave off a motion is not a good-faith response to Crocs's detailed and specific requests over the prior several months.

clearly define the information sought and requesting supplemental responses. It is undisputed the letter from the plaintiff was met with complete silence by the defendants").

**_Walgreen's sales of Dawgs footwear (RFP No. 2)_**: Similar to the first request, this request seeks documents <u>sufficient to show</u> Walgreens's retail sales of Dawgs footwear, and the prices at which the shoes were sold. This relates to damages for Crocs's patent claims, as well as to market definition for Dawgs's antitrust claims, as retail price information informs whether Crocs and Dawgs footwear are in the same market. Walgreens ignored Crocs's November 15 letter explaining the relevance, and refused to produce anything. Callagy Decl. Ex. 3; Ex. 2 at 5. Crocs respectfully asks that Walgreens be compelled to provide documents "sufficient to show" the specific and targeted information sought by Crocs.

**_Walgreen's communications with Dawgs regarding Crocs (RFP No. 3)_**: This narrow request seeks Walgreen's communications with Dawgs regarding Crocs. These documents are relevant to Dawgs's antitrust and tort claims, for which Dawgs seeks over $1 billion in damages based on allegations that Dawgs was foreclosed from selling footwear from 2006 onward because of misconduct and interference by Crocs. Colorado Action, ECF No. 209. Walgreens objected, stating that Crocs should obtain these documents from Dawgs. Ex. 2 at 6. However, Dawgs has not provided *any* email communications with Walgreens, and has refused to use "Walgreen!" as a search term for email correspondence. Callagy Decl. ¶15. Therefore, the prospect of relying on Dawgs to provide adequate records is dubious. Crocs had no choice but to seek the information from Walgreens.

When Walgreens objected that this request posed a burden (Ex. 2 at 5), Crocs offered that once Walgreens had identified the custodians at Walgreens who corresponded with Dawgs, the

search could be limited to those custodians.  Ex. 3 at 4.  Walgreens never responded or provided the requested custodian information.  Callagy Decl. ¶¶4-7.  For its part, Dawgs also has not identified which of its employees communicated with Walgreens.  *Id.* ¶15.  Given the refusal to provide relevant information by Walgreens and Dawgs on this topic, any objection based on burden has not been substantiated and must fail.

**B.  The Subpoena Poses Little Inconvenience to Walgreens, and Crocs Is Entitled to the Records to Ascertain the Completeness of Dawgs's Production.**

As set forth above, the documents sought are directly relevant and should be produced. *See, e.g.*, *Terry v. Zernicke*, No. 94 C 4052, 1996 WL 5183, at *1, *3 (N.D. Ill. Jan. 2, 1996) (compelling production by third party of a range of documents relating to the claims in the underlying action).  Walgreens waived any burden objection by failing to timely move to quash in this Court prior to the November 4 return date.  *See* Fed. R. Civ. P. 45(d)(3)(A); *Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006) ("It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena.").  Even if the Court entertains a burden objection, it is apparent that "the burden of compliance"  does not "exceed the benefit of production of material sought by it."  *Pacific Century Intern., Ltd. C. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012) (citations and quotations omitted).  Here, all relevant factors favor production, including "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolve the issues."  *Id.*. at 193 (citation and internal quotation marks omitted); *Williams*, 2008 WL 68680, at *3.  This especially so in light of Walgreens's failure to meet-and-confer in good faith.  *See id.*

Walgreens will likely argue that only Dawgs should produce responsive materials, but that is unsupported by law. Dawgs provided incomplete sales records and *no communications with Walgreens*, making this subpoena the only means to obtain complete information. Given the many gaps in Dawgs's production, Crocs may properly use third-party discovery to obtain complete records and ascertain what is missing. *See, e.g.*, *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 CIV. 4911(HB)(HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("[Crocs's] principal reason for seeking discovery from [Walgreens] is to confirm the completeness of [Dawgs's] document production. In this regard, [Crocs] cite[s] the fact that relevant documents concerning the activities of certain trade associations have been produced by other non-party witnesses but not by [Dawgs]. . . . [T]his fact provides a good faith basis for [Crocs's] subpoena, [and] it is evidence that [Walgreens] has relevant documents that have not been produced by [Dawgs]."). Indeed, courts recognize that third-party discovery may properly serve as a means to test a party's production. *See Heller's Gas, Inc. v. Int'l Ins. Co. of Hannover Ltd*, No. 4:15-CV-01350, 2016 WL 3077366, at *1 (M.D. Pa. June 1, 2016) (granting motion to compel and ordering production where "[Crocs] argue[d] that, after receiving information from various third parties requested through subpoenas, [Crocs] discovered that [Dawgs] failed to produce relevant and discoverable information."). Here, not only has Dawgs failed to produce complete records of sales to CVS and Walgreens, it has failed to produce any sales records (at all) of sales to several other third parties. Callagy Decl. ¶¶14, 19. Crocs issued subpoenas to those companies, several of whom produced sales records that Dawgs had never provided. *Id.* ¶19.

Finally, Dawgs's last-ditch email stating vaguely that third parties such as Walgreens may be "willing to produce" *something* provides no real assurance that Walgreens will actually

produce complete and responsive information. For one thing, the person who wrote the email is Dawgs's in-house attorney, not Walgreens's counsel. Callagy Decl. ¶7. Walgreens's own counsel has not agreed to make a production and never stated what Walgreens was willing to produce, despite Crocs's ongoing efforts to meet-and-confer. *Id.* Indeed, instead of speaking on the telephone as agreed, Dawgs's attorneys preemptively moved to quash the subpoena, further confirming that Walgreens has no real interest in making a production here. *Id.* ¶6.

### C. Crocs Seeks Its Fees and Costs to Deter Further Gamesmanship by Counsel for Dawgs and Walgreens.

Crocs respectfully requests that this Court award Crocs its fees and costs associated with this motion. An award will deter further obstruction of Crocs's right to obtain discovery. Notably, the attorney who has appeared on behalf of Dawgs and Walgreens is also representing Visions Limited and CVS, other third parties to whom Crocs has issued subpoenas. Callagy Decl. ¶¶16-18. In response to these subpoenas, counsel served the *same objections*, insisting without authority that Crocs obtain the documents from Dawgs instead. *Id.* Dawgs's production for Visions appears to be incomplete, and its production for CVS is unquestionably incomplete. *Id.* ¶¶14, 18. While Crocs already moved to enforce the CVS subpoena and intends to enforce the Visions subpoena, an award of fees and costs would send a strong message that future misconduct will not be tolerated. *Fidelity Na'l Title Ins. Co. of New York v. Intercounty Nat'l*, No. 00 C 5658, 2002 WL 193385, at *10 (N.D. Ill. Feb. 7, 2002) (awarding fees to moving party for responding party's failure to substantially justify non-compliance of the subpoena), *adopted*, 2002 WL 1433584, at *3, *7 (N.D. Ill. Jul. 2, 2002); *Teed v. JT Packard & Assocs., Inc.*, No. 10-MISC-23, 2010 WL 2925902, at *3 (E.D. Wis. July 20, 2010) (same); *see also Velocity Int'l, Inc. v. Celerity Healthcare Sols., Inc.*, No. 09-102, 2010 WL 2196423, at *5 (W.D. Pa. June 1,

13

2010) (holding that if party did not produce document as required, court would reconsider opposing party's request for sanctions in order to compensate it for third party subpoenas it had to serve in order to acquire documents that it had requested from the other party).

Moreover, sanctions are necessary because Dawgs's counsel—simultaneously serving as counsel for third parties Walgreens, Visions, and CVS—has intentionally obstructed Crocs's right to third party discovery from at least three third parties. Such conduct violates Crocs's right to third party discovery and is sanctionable. *See, e.g.*, *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 795 (E.D. Pa. 2012) ("[T]he harm from disregarding Rule 45 led to the parties filing additional motions, the Court holding hearings, and additional action by the Court. This not only increased the expense of this litigation to the parties, but required the expenditure of judicial resources unnecessarily."); *Fox Indus., Inc. v. Gurovich,* No. 03–5166, 2006 WL 2882580, at *8 (E.D.N.Y. Oct. 6, 2006) (sanctioning party for abuse of process because party interfered with third party subpoenas issued by other party by writing letters to nonparties requesting that the parties not produce any documents) ("it is the court's duty to rule on the validity of subpoenas and to direct the recipients to comply or not comply . . . ."); *In re Seagate Tech. II Sec. Litig.*, No. C-89-2493 (A)-VRW, 1993 WL 293008, at *2 (N.D. Cal. June 10, 1993) ("[T]he court hereby admonishes Seagate to refrain from interfering with the third-party discovery").

### III.       CONCLUSION

Crocs respectfully requests that the Court enter an order compelling production of responsive materials no later than three weeks from the date of the Court's order. Crocs also seeks its costs and fees associated with bringing this motion.

Dated:  December 9, 2016

Respectfully submitted,

*/s/ Mark J. Samartino*
Mark J. Samartino
Kaye Scholer LLP
Three First National Plaza
70 West Madison Street, Suite 4200
Chicago, IL 60602
(312) 583-2300
Fax: (312) 583-2360
Email: mark.samartino@kayescholer.com

*Designated Local Counsel for all attorneys of record for Crocs, Inc.*

*/s/ Michael A. Berta*
Michael A. Berta
Sean M. Callagy
Lara Palanjian
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:  415.471.3100
Facsimile:   415.471.3400
michael.berta@aporter.com
*Attorneys For Plaintiff, Crocs, Inc.*
*Pro Hac Vice Applications to be filed forthwith*

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Local Rule 37.2, undersigned counsel Sean Callagy certifies that he and his colleague Lara Palanjian attempted to meet and confer with Walgreens's counsel Brian Elliott, first by sending two letters, each of which went unanswered, and finally by arranging to speak via telephone at 3:00 p.m. on December 7, 2016 in a final attempt to resolve this discovery dispute in good faith. Although agreeing to the December 7 meet and confer call, Mr. Elliott missed the call without any notification. Thus, the parties have been unable to resolve the issues raised herein without court action.

<u>/s/ Sean M. Callagy</u>

## CERTIFICATE OF SERVICE

On December 9, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record electronically and by overnight courier or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


By:  /s/ Mark J. Samartino                   

## SERVICE LIST

Brian J. Elliott, Esq., Attorney at Law
9311 North FM 620, #36 Austin, Texas 78726
Austin: (512) 961-7000
Las Vegas: (702) 530-4529
bje@brianelliottlaw.com

Counsel for Walgreens Company, U.S.A. Dawgs, Inc.
and Double Diamond Distribution, Ltd.

David J. Kaplan
Mitchell C. Shapiro
U.S.A. Dawgs, Inc.
4120 W Windmill Ln, #106
Las Vegas, Nevada 89139
T: 702.260.1060
F: 702.260.1606
E: dkaplan@usadawgs.com
E : mcs@usadawgs.com

Counsel for U.S.A. Dawgs, Inc. and Double Diamond Distribution, Ltd.